IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

DONALD LENTINI                                                            PLAINTIFF

VS.                                     CIVIL ACTION NO.  2:04CV22KS-MTP

RON KING AND CHRISTOPHER EPPS                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment. From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that plaintiff's motion should be denied and defendants' motion should be granted in part and denied in part. The court specifically finds as follows:

### FACTUAL BACKGROUND

Plaintiff, Donald Lentini, filed this *pro se* prisoner suit on January 22, 2004, alleging violations of his civil rights pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, while he was incarcerated at the South Mississippi Correctional Facility ("SMCI"). Specifically, plaintiff alleges that he was denied medical treatment for his Hepatitis C condition, and that he was also denied treatment for his depression, which he considers a symptom of his Hepatitis C, both in violation of the Eighth Amendment to the United States Constitution, and that he was discriminated against on the basis of his depression.

Mr. Lentini was incarcerated in May of 2003 and was transferred to SMCI on or about

1

July 1, 2003.  On Mr. Lentini's Commitment Report prepared by the MDOC, in response to the question "Mental/Psychiatric Disorder evident?" it is stated: "psych meds."  On July 7, 2003 physician's notes it is stated that Mr. Lentini had a history of suicide attempts and that the physician "would like to talk to M.D. about getting started back on his medications, and when he can get started on his Hep C treatment."  And on a July 18, 3003 Initial Classification Summary Report, it is stated that Mr. Lentini's primary treatment needed was "psy-referra."

Beginning on August 2, 3003 and continuing through November 2, 3003, Mr. Lentini made seven sick call requests complaining that he needed treatment for his Hepatitis and that he also needed to see a psychiatrist and get back on his antidepressants.  Although Mr. Lentini was seen by a doctor on several occasions for the physical problems he was complaining of (specifically, sinus problems, muscle and joint pain and fatigue), as of November 2, 2003 (the date of the last sick call request), he had still not seen a psychiatrist, although on a September 12, 2003 sick call request it was noted that he had been "referred to psych" and on a September 25, 2003 sick call request it was stated: "You are on Dr. D'Ilio's [an SMCI psychologist] list.  You will have to wait your turn."

Mr. Lentini initiated a Request for Administrative Remedy on September 6, 2003, which was accepted by the Legal Claims Adjudicator and forwarded to Mr. Bobby King, the Health Services Administrator for SMCI and a former defendant in this lawsuit, on October 1, 2003.  In the meantime, it was noted in Mr. Lentini's medical records by Dr. D'Ilio on October 7, 2003 that Mr. Lentini's medical records from the VA had been reviewed, and those records revealed that he had an "extensive psych history."  Dr. D'Ilio requested on a medical follow-up form that Mr. Lentini be transferred to an "appropriate facility immediately."

On October 16, 2003, Mr. Lentini received a written response to his First Step from Mr. King.[1] Mr. Lentini responded that he was not satisfied with this response because of SMCI's failure to refer him to a psychiatrist and he then commenced the Second Step by sending the documentation to the Superintendent, defendant Ronald King. Mr. Lentini also included a statement discussing his Hepatitis and related medical problems, and explaining that he had been under the care of a psychiatrist since the summer of 2000 due to a suicide attempt caused from depression resulting from his Hepatitis. On an October 18, 2003 sick call request it was noted that Mr. Lentini was waiting for an appointment with a psychiatrist. Ronald King responded to the Second Step on October 30, 2003, stating that "[t]he SMCI medical providers are doing all that is within their power to provide you with the proper medical care that you deserve." Ronald King noted that Mr. Lentini had been evaluated and treated on multiple occasions for his sinus complaints, and then he was referred on September 22, 2003 to see a psychologist. Mr. Lentini indicated that he was not satisfied with this response because he had still not seen a psychiatrist, and he therefore commenced the Third Step by sending the documents to the Commissioner, defendant Christopher Epps. Mr. Lentini also included a statement in which he complained that he was still suffering from the symptoms of Hepatitis C (sinus problems, joint and muscle aches, fatigue and depression). On November 26, 2003, Mr. Epps responded that "[t]he staff of the Administrative Remedy Program has received and investigated your grievance" and had determined that because staff physicians felt that he had received adequate medical attention, Mr.

---

[1] Bobby King's response has not been provided to the court.

Lentini's request for further relief was denied.[2]  On November 26, 2003, the administrator of the Administrative Remedy Program certified that Mr. Lentini had fulfilled its requirements.

The instant lawsuit was commenced on January 22, 2004.  Mr. Lentini finally saw a psychiatrist - Dr. Gail Williams - toward the end of August 2004.  Mr. Lentini saw Dr. Williams three times, and Dr. Williams denied Mr. Lentini's request to be put back on antidepressants.  Therefore, on November 29, 2004, Mr. Lentini filed a second Request for Administrative Remedy concerning the denial of antidepressant medication.  Mr. Lentini complained in the request that he had waited a year to see a psychiatrist, and that Dr. Williams refused to put him back on antidepressants.  This claim was accepted by the Legal Claims Adjudicator and forwarded to Bobby King on January 6, 2005.  On the First Step Response Form dated January 13, 2005, Dr. Gail Williams stated: "My clinical judgment is that Mr. Lentini does not need antidepressant medication.[3]  Mr. Lentini responded that he was not satisfied with this response because of Dr. Williams' failure to put him back on antidepressants.  He explained that before coming to prison he had been treated by several different psychiatrists and had been on anti-depressants.  He then commenced the Second Step by sending the documentation to Ronald King.  In response, Ronald King wrote on February 8, 2005 that Mr. Lentini's grievance had been investigated and he concluded: "I find that SMCI Medical Providers have examined you and have determined that you do not need antidepressant medication.  No relief can be granted by this

---

[2] At some point in late 2003 (it is unclear exactly when) plaintiff's sister, Virginia Mack, sent an undated letter to Mr. Epps, with a copy to Mr. Ronald King, in which she expressed her concern that Mr. Lentini had not received adequate treatment for his Hepatitis C, and had still not seen a psychologist or psychiatrist for his depression.

[3] The document is signed by Dr. Williams, although at the top it indicates that it is from Bobby King, to whom the First Step had been directed.

office." Mr. Lentini indicated that he was not satisfied with this response because he still was not receiving antidepressant medication, because although he was supposed to be seeing Dr. Williams on a regular basis, he had not seen him since November 18 (two months prior), and because on the few, short occasions when he had seen Dr. Williams, Dr. Williams was only interested in how his lawsuit was going and did not seem interested in whether he was suffering from any kind of depression. Mr. Lentini therefore commenced the Third Step by sending the documents to Mr. Epps. In response Mr. Epps wrote on March 11, 2005 that his request had been investigated and that based on Dr. Williams' opinion, it was being denied. On March 11, 2005, the administrator of the Administrative Remedy Program certified that Mr. Lentini had fulfilled its requirements. Mr. Lentini was transferred to a different facility - Parchman - on April 12, 2005. A month later, he was started back on his antidepressant medication.

 Meanwhile, Bobby King moved for summary judgment on January 18, 2005. On August 8, 2005, Magistrate Judge Michael T. Parker entered a Report and Recommendations in which he recommended that defendant Bobby King's motion for summary judgment be granted as to plaintiff's claim of denial of medical treatment for plaintiff's Hepatitis C condition (but not as to his claim of medical treatment for his depression, as it had not been expressly and separately addressed). In an Order dated September 26, 2005, this court adopted the report and recommendations and made an additional finding that Bobby King's motion for summary judgment should be granted in its entirety based on the facts that: Bobby King is merely the administrator of the SMCI medical facility; is not a medical doctor; is not the medical doctor of SMCI; did not treat the plaintiff; did not recommend treatment of the plaintiff; did not review the treatment of the plaintiff; and had no input into the treatment of the plaintiff. This cout found

that "plaintiff has set forth no evidence which would create a genuine issue of material fact as to the liability of Bobby King to the plaintiff."  Bobby King was therefore dismissed from this lawsuit.

On May 11, 2006, plaintiff filed a motion for summary judgment.  Defendants responded on November 13, 2006 and cross-moved for summary judgment.

SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The moving party, however, need not negate the elements of the non-movant's case.  *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to show with "'significant probative' evidence" that a genuine issue of material fact actually exists. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994) (citation omitted).  To overcome summary judgment, the non-movant may not rest on the pleadings, but must identify specific evidence in the ... record demonstrating that there is a material fact issue concerning the

essential elements of its case." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257. "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1996) (citation omitted). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence...will be insufficient" to defeat a properly supported motion for summary judgment.). "[C]onclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). The non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

  When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. *Anderson*, 477 U.S. at 255. The district court, therefore, "must not resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (internal citation omitted). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647, 651 (5th Cir.

1962).  By contrast, summary judgment for the moving party is only proper when a rational factfinder, looking at the record as a whole, could not find for the nonmoving party.  *Matsushita*, 475 U.S. at 587.

## ANALYSIS

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain.*"  Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004), *cert. denied*, 543 U.S. 864 (2004), (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  In order for a prisoner to prevail on such a claim, he "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Fifth Circuit has noted that deliberate indifference "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).   To successfully make out a showing of deliberate indifference, plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Davidson*, 91 Fed. Appx. at 965 (*quoting Domino*, 239 F.3d at 756).  "Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983."  *Id.*  (*citing Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).  Additionally, a prisoner's mere disagreement with the treatment he received will not stand as a basis for § 1983 liability, absent extraordinary circumstances.  *Id.* (*citing Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.

8

1995)). .

In addition, section 1983 liability cannot be premised on the doctrine of *respondeat superior*. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 286 (5th Cir. 2002) (*citing Doe v. Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (*en banc*)).  A supervisory prison official may be held liable for a section 1983 violation only if he either was personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Plaintiff's only argument in support of his Section 1983 claim regarding his Hepatitis C treatment is his subjective belief that it was not treated appropriately.  There is no evidence whatsoever in the record to indicate that prison officials were "deliberately indifferent" to Mr. Lentini's medical needs with respect to his Hepatitis C.  Rather, the record indicates that prison doctors treated Mr. Lentini for this condition repeatedly and that he disagreed with their treatment.  As discussed above, however, a prisoner's disagreement with his treatment or allegations of ordinary negligence or medical malpractice are not actionable under section 1983. *See Davidson*, 91 Fed. Appx. at 965. Accordingly, defendants' motion for summary judgment on this claim is denied.

The court will now turn to Mr. Lentini's Section 1983 claim based on SCMI's treatment of his psychiatric problems.  As a threshold matter, defendants claim that Mr. Lentini failed to exhaust his administrative remedies with respect to his complaint of denial of antidepressant medication.  They base this argument on an affidavit of Larry Hardy, the Administrative Remedy Process Legal Claims Adjudicator at the Mississippi Department of Corrections, who avers that

9

Mr. Lentini filed a grievance concerning denial of antidepressant medication but withdrew it on October 10, 2005.  Attached to the affidavit is the following statement by Mr. Lentini: "I no longer have need for the ARP that I filed on 9/30/05 as my medication has started back up."  Contrary to defendants' argument, it is clear from this document, as Mr. Lentini points out, that this relates to an entirely different grievance than the two at issue in this lawsuit (filed on September 6, 2003 and November 29, 2004).  There is no question in the court's view that Mr. Lentini has exhausted administrative procedures with respect to those two grievances.  The first grievance concerns Mr. Lentini's repeated requests to see a psychiatrist and the second grievance complaints about Dr. William's refusal to put him back on antidepressant medications.  Accordingly, Mr. Lentini has exhausted administrative remedies with respect to all aspects of his claim regarding treatment for his depression.

Defendants also argue that Mr. Lentini is suing them "for not granting him the relief he sought in the MDOC grievance procedure" and that because the grievance procedure does not affect the duration or his imprisonment, under Fifth Circuit precedent he cannot establish that he has a state-created liberty interest in that procedure.  However, the cases cited by defendants in support of this proposition - *Cole v. Abbott*, 91 Fed. Appx. 936 (5th Cir. 2004) and *Orellana v. Kyle*, 65 F.3d 29 (5th Cir. 1995) involved Section 1983 claims premised on due process and/or equal protection violations, which require a liberty interest.  Mr. Lentini's Section 1983 claims are based on the Eighth Amendment - specifically, that defendants failed to provide him with adequate medical care - and these claims are clearly cognizable under Section 1983.

Next, defendants argue that they are entitled to qualified immunity.  "Qualified immunity provides government officials performing discretionary functions with a shield against civil

damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citation omitted). An official is not entitled to qualified immunity where: 1) plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and 2) the official's actions violated that right to the extent that an objectively reasonable person would have known. *Id.* (citations omitted). Mr. Lentini claims that his Eighth Amendment's prohibition against cruel and unusual punishment was violated by defendants' deliberate indifference to his serious medical needs. This is a clearly established right. *See*, *e.g.*, *Gobert*, 463 F.3d at 345 (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Therefore, the first prong is satisfied.

With respect to the second prong, in order for plaintiff to demonstrate a violation of his Eighth Amendment rights, he must prove: 1) "objective exposure to a substantial risk of serious harm"; and 2) that defendants acted or failed to act with deliberate indifference to that risk. *Id.* at 345-46 (citations omitted). With respect to the first prong, a serious medical need "is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12 (citation omitted). Moreover, "a serious medical need may exist for psychological or psychiatric treatment, just as it may for physical ills." *Domino*, 239 F.3d at 754 (*quoting Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986)). The evidence in the record demonstrates that it was clear from as early as July of 2003 that Mr. Lentini had a history of psychiatric problems, that he had attempted suicide on prior occasions, that he had been taking antidepressants and had been under the care of various psychiatrists prior to his incarceration, that a few months after his

transfer to SMCI, when his VA records had been reviewed, it was requested by Dr. D'Ilio that Mr. Lentini be transferred to an appropriate facility immediately so that his psychiatric problems could be addressed, that Mr. Lentini's request to see a psychiatrist, beginning in August 2003, were not granted until August 2004, and that he was not transferred to Parchman and put on antidepressants until 2005. The court finds that plaintiff has established that he was objectively exposed to a substantial risk of serious harm.

      The standard for the second prong - deliberate difference - was discussed above and will not be repeated here. As opposed to Mr. Lentini's Hepatitis C, for which he received ongoing medical treatment (albeit, unsatisfactory medical treatment), the record is clear that Mr. Lentini's repeated requests to see a psychiatrist regarding his depression were not granted until August 2004, when he finally saw Dr. Gail Williams. Dr. Williams did not place Mr. Lentini on antidepressants because it was his clinical judgment that Mr. Lentini did not need them. Moreover, although Mr. Lentini's psychiatric problems were noted in his medical records upon his transfer to SMCI, and although Dr. D'Ilio, upon reviewing Mr. Lentini's records from the VA hospital, recommended immediate transfer to an appropriate facility, Mr. Lentini was not transferred to Parchman until April 2005, and was not placed back on antidepressants until the following month. The two grievances filed by Mr. Lentini detail these concerns at length. Defendants both participated in the grievances by allegedly investigating Mr. Lentini's claim, as indicated in their responses to the grievances. The court finds that there is a genuine issue of material fact regarding whether defendants were deliberately indifferent to Mr. Lentini's serious medical needs (and consequently whether they are entitled to qualified immunity) and therefore, the court cannot grant judgment as a matter of law to either party on this aspect of plaintiff's

section 1983 claim. Accordingly, summary judgment for defendants' on this claim is denied and summary judgment for plaintiff on this claim is denied.[4]

ADA Claim

Title II of the ADA, 42 U.S.C. § 13132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[5] Disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individuals." 42 U.S.C. § 12102.

With respect to Mr. Lentini's issues regarding SMCI's treatment of his Hepatitis C, even

---

[4] Defendants also argue that plaintiff is merely suing them in their administrative, supervisory capacities, "ostensibly for the actions of their subordinates," and that they cannot be liable on a theory of *respondeat superior* or vicarious liability. To that end, they argue that because "the actions of their subordinates in this case have been determined by the Court to not have violated the Plaintiff's Eighth Amendment rights," they cannot be liable under section 1983. It is true, as noted above, that there is no *respondeat superior* nor vicarious liability under section 1983. However, plaintiff is not suing defendants for the actions of their subordinates, but for their own actions/inactions - or, as plaintiff put it in his response to their motion for summary judgment, "what I'm suing the defendants about is their refusal to do their jobs and make sure that an actual investigation had been done before they signed their names on my second and third step of my two completed ARP's." Thus, the fact that Bobby King has been dismissed is not dispositive of whether defendants should be dismissed. In addition, as noted earlier, Mr. Bobby King did not sign the second grievance (specifically regarding denial of psychiatric care and antidepressants) and it is unclear whether he reviewed it at all. And the Magistrate's report recommending that summary judgment be granted to Bobby King does not address Mr. Lentini's claims regarding his treatment for depression. Although this court's order adopting the report made additional findings and granted summary judgment of all claims against Bobby King, there is no specific discussion about the claim regarding treatment for depression and no findings were made regarding the facts underlying that claim or its substantive merit.

[5] The Supreme Court has held that Title II of the ADA covers inmates in state prisons. *Penn. Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998).

13

assuming that this condition would be considered a disability within the meaning of the ADA, Mr. Lentini would not have a cause of action because he was not denied medical treatment. Rather, he was treated and he disagrees with the treatment provided. At most, this is a claim for negligence and therefore is not actionable under the ADA. *See*, *e.g.*, *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996), *reh'g denied*, 91 F.3d 994 (7th Cir. 1996) (ADA "does not create a remedy for medical malpractice."); *McNally v. Prison Health Servs.*, 46 F.Supp. 2d 49, 58 (D. Me. 1999), *reconsideration denied*, 52 F.Supp. 2d 147 (D.Me. 1999) (claim that medical treatment received for disability was inadequate does not state ADA violation); *Moore v. Prison Health Services, Inc.*, 24 F.Supp. 2d 1164, 1168 (D.Kan. 1998), *aff'd*, 201 F.3d 448 (10th Cir. 1999) (same).

With respect to Mr. Lentini's psychiatric problems, depression and other mental illnesses can qualify as disabilities for the purposes of the ADA. *See Stradley v. Lafource Communs., Inc.*, 869 F.Supp. 442, 443 (E.D. La. 1994); 29 C.F.R. § 1630.2(h)(2) (defining disability to include "[a]ny mental or psychological disorder, such as ... emotional or mental illness..."). And mental health services are "services, programs, or activities of a public entity" within the meaning of the ADA. *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (citations omitted). The record is clear that for a long period of time, Mr. Lentini's request to see a psychiatrist was not granted, and that when he was allowed to see a psychiatrist, the psychiatrist denied his request to be placed back on antidepressants. However, in order to state an ADA claim, Mr. Lentini must demonstrate that he was "adversely treated *solely because of* his handicap...." *Davidson*, 91 Fed. Appx. at 965 (emphasis added); *see also Harksen v. Mullins*, 2005 WL 2333499, at * 7 (W.D. Va. Sept. 22, 2005) (dismissing ADA claim where inmate

"offer[ed] no evidence on which any jury could find that the defendants denied him treatment for HBV [Hepatitis V virus] solely *because* he is disabled by HBV. Rather, defendants denied him drug therapy for HBV because repeated diagnostic blood tests indicated that he was not in an active phase of the disease and so was not a candidate for the drug therapy that he demanded.").[6] The record reflects, rather, that Mr. Lentini was, after some delay, seen by a psychiatrist, Dr. Williams, and that Dr. Williams found in his medical opinion that Mr. Lentini did not need to be on antidepressants.

     Mr. Lentini also alleges that he was refused "trustee status" because his level of care was classified as "level C," based on his psychiatric problems, whereas other inmates with disabilities who had the same charge as him and were also sentenced in 2003, were placed into trustee status. Mr. Lentini alleges that as a result of not being put in trustee status, he served six months longer on his sentence than he would have had to. He alleges that he was discriminated against on the basis of his psychiatric problems. In support of these allegations, Mr. Lentini has attached two Sentence Computation Records for two inmates. It is impossible to tell from these records whether these inmates suffered from any disability, let alone from the same disabilities Mr. Lentini suffers from. Only one of these inmates was sentenced for the same crime as Mr. Lentini - possession of a controlled substance with intent to distribute (the other inmate was sentenced for felony driving under the influence). These documents are insufficient for plaintiff to establish that he was discriminated against on the basis of his disability.

---

[6] One way Mr. Lentini could make such a showing is providing evidence that he was denied access to treatment that was been provided to other prisoners. *See Rashad v. Doughty*, 4 Fed. Appx. 558, 560 (10th Cir. Jan. 29, 2001); *McNally*, 46 F.Supp. 2d at 58; *Moore*, 24 Supp. 2d at 1167. Mr. Lentini has not made such a showing.

Accordingly, even assuming that Mr. Lentini were able to establish that he was substantially limited in major life functions as a result of his depression, he still would not state a claim under the ADA and therefore summary judgment is granted for defendants on this claim.

IT IS, THEREFORE, ORDERED AND ADJUDGED that plaintiff's motion for summary judgment [**# 85**] is denied and defendants' motion for summary judgment [**# 93**] is granted in part and denied in part.  Plaintiff's ADA claims are dismissed with prejudice.  Plaintiff's Section 1983 claim based on his Hepatitis C treatment is dismissed with prejudice.  Plaintiff's Section 1983 claim based on his treatment for depression is not dismissed.

SO ORDERED and ADJUDGED on this, the 26th day of January, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE